DECREE ACCORDINGLY.

---

## J. R. LICHTY v. J. C. MOORE ET AL.

FILED NOVEMBER 8, 1893.    No. 4715.

1. **Negotiable Instruments: RIGHTS OF GUARANTOR: SURETIES.** The mere fact that a guarantor of a promissory note, at the request of the principal maker of said note, received the amount loaned thereon and paid it in the discharge of a judgment against said principal maker, whereby the lien of said judgment, paramount to that of a mortgage held by said guarantor upon real property of said principal maker, was released, there being no fraud or circumvention shown, does not affect the right of said guarantor to recover the amount which he has been compelled as such to pay, even though the parties whom he sues as makers of said note were stay sureties on the judgment so paid; and this rule is not qualified by the mere fact that the parties so sued were in fact but sureties on the note with the party who instructed said guarantor to make payment as aforesaid.

2. ——— : **SURETY ON STAY BOND: SUBROGATION.** A stay surety

is not entitled to be subrogated to the rights of the holder of a stayed judgment merely by reason of the fact that such stay surety has signed a note as surety with the judgment debtor, upon which note the money has been loaned with which payment of the stayed judgment was made.

3. ———: ACTION BY GUARANTOR FOR REIMBURSEMENT: DEFENSE: VOLUNTARY ASSIGNMENTS. In a suit by a guarantor for reimbursement of the amount which, by reason of such guaranty, he has been compelled to pay, it is no defense that the original payee of the note, as assignee of the estate of the principal maker thereof (for whom the defendants claim they are but sureties), wasted the estate of said principal maker so that he could not pay as he otherwise could. the said assignee having duly accounted, and been duly discharged by the court which appointed him such assignee.

4. Trial: DIRECTING VERDICT. Where the defenses pleaded are wholly unsustained by the evidence, it is error for the trial court to direct a verdict in favor of the defendants.

ERROR from the district court of Thayer county. Tried below before MORRIS, J.

*O. H. Scott* and *Hambel & Heasty*, for plaintiff in error.

*Manford Savage* and *S. A. Searle, contra.*

RYAN, C.

In the district court of Thayer county, Nebraska, J. R. Lichty brought suit against J. C. Moore, James M. Moore, John Kinney, and G. Heinrichson, alleging as his cause of action that upon the request of the defendants he had guarantied, and been compelled to pay about eighty-seven per cent of the amount of a promissory note of which the defendants were the makers. The note in respect of which suit was brought was in the words and figures following:

"$285. DAVENPORT, NEB., January 1, 1886.

"Six months after date, I, we, or either of us, promise to pay to Jacob F. Walker, or order, two hundred and eighty-five dollars, for value received, negotiable and payable

without defalcation or discount, with interest at the rate of ten per cent per annum from date until paid.

"If suit is instituted on this note we agree to pay ten per cent of the amount then due, as agreed, assessed, and liquidated damages for non-fulfillment of contract, the same to be allowed by the court and included in the judgment.                                        J. C. MOORE.

                                        "JAMES MOORE.
                                        "JOHN KINNEY.
                                        "G. HEINRICHSON."

The defendants John Kinney and G. Heinrichson answered, first, admitting their signatures upon the note sued on, but alleging that they signed as sureties only, and that Walker, the payee, was well aware of that fact at the time the note was signed, and that plaintiff well knew it long before he paid said note, if he ever paid the same. There was also a denial by these two defendants of each averment in the petition not admitted by the answer. There were other defenses pleaded, but as there were only two in support of which evidence was adduced, they alone will be considered. In passing, it may be remarked that there was a reply which put in issue each averment of these matters, to which attention will now be directed.

In the answer the two defendants above named made the following averments: "That on March 25, 1886, James Moore and J. C. Moore, who are the principal makers of said note, made an assignment of all their property for the benefit of their creditors in accordance with law; that within ten days after said date the said Jacob Walker was appointed assignee of said estate and took possession of the property belonging thereto. The assets of said estate amounted to the sum of $20,000, and the debts to the sum of $11,000, at the time the said Walker took possession of the same as aforesaid; that within the time provided by law the said Jacob Walker, without the consent

of these defendants, filed said note as a claim against the said estate, and has paid to himself from the assets of said estate two dividends upon the note aforesaid, and at the time said note became due and payable the said Jacob Walker had in his possession money and property largely in excess of the debts of the said principal makers of said note; that said estate yet remains unsettled, and a large amount of assets are in the hands of said Jacob Walker, the amount of which is unknown to these defendants.

"The defendants further allege that they are informed and believe that the said Jacob Walker has so managed the estate of the principal makers of said note that the district court of Nuckolls county refused to confirm the sale of the real estate belonging thereto, and that said Jacob Walker has charged excessive fees, and that while said estate, if properly managed, would have paid the debts of said James Moore and J. C. Moore in full, through the mismanagement of said Jacob Walker, the said estate has paid the creditors only thirteen cents on the dollar, and not to exceed ten cents more on the dollar will be realized therefrom. Defendants were led to believe that when said Walker filed said note against said estate it would be paid in full, and they had no means of knowing the condition of said estate, and that all knowledge of the same was kept from them by the payee of the note, who was the assignee of said estate; that said Walker made no attempt to collect said note from the plaintiff, or any one else, until he had, by mismanagement as aforesaid, exhausted the property of the principal makers of said note."

Perhaps it is unnecessary to remark that the Jacob Walker above referred to was the payee of the original note. The evidence discloses on this head that said Walker was constituted the assignee of the estate of J. C. Moore and James Moore, and that the assets consisted of a large amount of property, both real and personal. There were in evidence certified copies of the reports filed by the assignee

during the progress of the administration of the estate of said insolvent parties, followed by his final report and the approval of the same, together with an order of discharge of the said Walker as such assignee.   During the administration of said estate there were two dividends declared, amounting in the aggregate to about thirteen per cent of the claims filed; and for this thirteen per cent due credit was given by plaintiff in his petition, as he only sued for the balance of about eighty-seven per cent due on said note. In this condition of the pleadings we are at a loss to conjecture what defense the averments constituted, in an action brought by Lichty upon a note which he had guarantied at the request of at least one of the makers, though without the express assent of the others, and which, by reason of the failure of the makers so to do, he had been compelled to pay.   If Walker mismanaged the estate of the insolvents Moore and Moore, that fact should have appeared in some manner in the county court.   In this action there was no malfeasance shown.   The testimony simply was that the Mill property, for instance, was of a certain large value, about $14,000; that thereon was a mortgage of $2,000; that the property afterwards sold on a foreclosure in the federal court for about $2,600.   If there was any element of misfeasance or malfeasance with respect to this, the great bulk of the property of the Moores, it must have occurred in allowing the foreclosure and sale upon the mortgage.   But this was a matter that was within the jurisdiction of the federal court; and if the property was unfairly sold, or had been unnecessarily sacrificed, the proper forum in which to present that matter would have been the circuit court of the United States for the district of Nebraska.

Another defense pleaded by Kinney and Heinrichson was in the following language:

"13. That the plaintiff did not write his alleged guaranty upon said note at the request of either of the makers of the same, nor of the sureties thereto, but the name of the

22

plaintiff was thereon placed by the plaintiff in order that the plaintiff could procure the money advanced on said note to use for his own benefit; and the plaintiff did use said money, and the same was used to pay off a lien on said property of the principal makers of said note in order that the plaintiff should have the first lien upon the property aforesaid, and the indorsement was made on said note by the plaintiff for the benefit which he was to receive, and which he did receive therefrom."

J. F. Walker testified that Mr. Lichty signed the guaranty in his presence at the request of Mr. Moore. His language is as follows: " Mr. Moore came down twice, and had this note signed with these sureties on. I told him I was not acquainted with the sureties, and he went home and came back the second time with a letter from the bank which said these sureties would be good for a reasonable amount; and I still refused, for I was not acquainted with them, and in our conversation he wanted to secure this note, saying, he could not get the money; and in that conversation he mentioned Lichty and said he was acquainted with Lichty. I believe I asked him if Lichty knew these parties, and he said he did; and I offered if he could get Lichty to guaranty this note I would give him the money on that, and he went out to see Lichty." This witness further said that he told Moore that if he would get Lichty to guaranty the note witness would let him have the money; and that Lichty had paid the note. There is no evidence in conflict with this, and it must, so far as it goes, stand as a verity.

In relation to the use made of the money, there is no question that it was paid to satisfy certain judgments which were liens upon the property of J. C. and James Moore. In fact, the evidence is without contradiction that the money was borrowed for this very purpose. The payment of it to Mr. Weiss, the attorney for the judgment creditors, was made by Mr. Lichty, but his instructions in that regard

allowed him no discretion in the matter. The proceeds of the note were entrusted to him to be paid on these judgments. It is true, perhaps, that if there had been an assignment of these judgements for the benefit of the sureties so that the judgments would not have been discharged it might have inured to the benefit of the defendants who have made this answer. The defendants in error insist that it was the duty of Mr. Lichty to procure such an assignment of the judgments to be made to the answering defendants, because they were sureties on the stay bond in respect to such judgments. But it is obvious that the loan was made by Walker to the principal debtors, both in the note and in the judgments to be satisfied. Upon request of one of the principal defendants, Mr. Lichty made the payments upon such judgments. It might have been that if the sureties upon the stay bond, as well as upon the note, had advanced the money to make these payments, an equity entitling them to subrogation would have arisen in their favor. But such was not the case. They in no manner were instrumental in procuring this money, except as sureties for J. C. and James Moore. Collateral to their liability was also the liability of Lichty, a guarantor; and, so far as the disposition of the money raised upon this note was concerned, there would seem to be fully as much equity in favor of Lichty as in favor of Kinney and Heinrichson. The fact that incidentally, by the payment of the two judgments referred to, there were released liens prior to the mortgage lien held by Lichty upon the same property, would not impair his rights in an action of this kind. If Kinney and Heinrichson are entitled, in equity, to be subrogated to the lien of the judgments extinguished by the payments made by Lichty, their remedy lies in a proper action brought for that purpose. We cannot see, however, that they have any standing in this case to set up the fact of such payments as a defense against the liability attempted to be enforced by Lichty upon the note.

These defenses were the only ones in support of which any evidence was presented. Upon the issues joined the court instructed the jury as follows: " Upon the uncontradicted facts in evidence herein the plaintiff cannot recover against the defendants John Kinney and G. Heinrichson; but defendants J. C. Moore and James Moore, having failed to answer, the plaintiff will be entitled to recover judgment against them for the amount he paid to Jacob Walker on the note in question in this action, and interest on said payments according to the tenor of the promissory note herein, less the amounts, if any, which have been paid on said note, from the time of such payments to the first day of this term of court, to-wit, April 23, 1890." To this instruction there was due exception, and its correctness is sufficiently challenged by a motion for a new trial, overruled in due course, and properly excepted to, followed as this was by a judgment on the verdict in accordance therewith.

A review of the defenses set up in the answer, and of the evidence in support of each, is attended with considerable difficulty, owing to the fact that the instruction complained of does not definitely point out any grounds upon which the trial court acted in withdrawing the cause from the consideration of the jury. It has been necessary, therefore, to consider all the defenses in support of which there was any evidence given. There is no doubt from the testimony that the note was made by the defendants in this action, and that it was guarantied by Lichty, and that he, induced by threats of legal proceedings, paid the same. The matters attempted to be asserted in resistance of contribution by the parties to the note constitute, under the evidence given, no defense.

From the views above expressed it necessarily follows that the judgment of the district court is

REVERSED.